**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 18-4883**

———————

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

CORY STEPHON BOYD,

Defendant – Appellant.

———————

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Terry L. Wooten, Senior District Judge.  (3:16-cr-00251-TLW-1)

———————

Argued:  October 29, 2021                          Decided:  November 30, 2022

———————

Before HARRIS, QUATTLEBAUM, and RUSHING, Circuit Judges.

———————

Affirmed by published opinion.  Judge Rushing wrote the majority opinion, in which Judge Quattlebaum joined.  Judge Harris wrote a dissenting opinion.

———————

**ARGUED:** Daniel Charles Leonardi, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Leesa Washington, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.  **ON BRIEF:**  A. Lance Crick, Acting United States Attorney, Greenville, South Carolina, M. Rhett DeHart, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

———————

RUSHING, Circuit Judge:

Defendant Cory Boyd pleaded guilty to a drug offense and a related firearms offense in violation of federal law. He was sentenced as a career offender under the Sentencing Guidelines based on two prior state convictions: a 2007 conviction for assault with intent to kill (AWIK) and a 2013 conviction for what the district court determined was possession of a controlled substance with intent to distribute (PWID). Now on appeal, Boyd challenges his career-offender status and resulting sentence. He first argues that the district court erred in relying on inconclusive state-court sentencing documents to find that Boyd's 2013 drug conviction was, in fact, a conviction for PWID. Second, Boyd questions whether his 2007 AWIK conviction remains a Guidelines crime of violence following the Supreme Court's ruling in *Borden v. United States*, 141 S. Ct. 1817 (2021). If we agree with Boyd on either of these points, his career-offender status cannot stand, and Boyd asks that we remand for the district court to resentence him without it.

But we disagree with Boyd on both grounds. The district court did not err in relying on Boyd's state-court sentencing sheet to determine that his 2013 conviction qualified as a controlled substance offense. And because Boyd did not contest that his AWIK conviction qualified as a predicate offense in his initial briefing with this Court, that argument is waived. Accordingly, we affirm.

I.

A.

A federal grand jury returned a three-count indictment charging Boyd with possession of cocaine and cocaine base with intent to distribute, in violation of 21 U.S.C.

2

§ 841(a)(1), (b)(1)(C) (Count 1); possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 2); and felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count 3). Boyd pleaded guilty to Counts 1 and 2 pursuant to a written plea agreement.

In advance of sentencing, the probation office prepared a presentence report in which it concluded that Boyd qualified as a career offender under the United States Sentencing Guidelines. *See* U.S.S.G. § 4B1.1. That conclusion was predicated on two of Boyd's prior South Carolina convictions: a 2007 AWIK conviction and a 2013 conviction for what the presentence report concluded was PWID marijuana, first offense.

Boyd objected to the career-offender classification. Regarding his AWIK offense, Boyd argued it did not constitute a "crime of violence" under the Guidelines, *see* U.S.S.G. § 4B1.2(a), because under South Carolina law AWIK can be accomplished without the use, attempted use, or threatened use of physical force. Boyd also urged that South Carolina AWIK lacked the mental state necessary to qualify as a predicate offense because it requires only recklessness and "the Fourth Circuit has held that a recklessness *mens rea* is insufficient to establish that an offense is a crime of violence." J.A. 180 n.4. As for his 2013 state drug conviction, Boyd contended that it did not qualify as a "controlled substance offense" under the Guidelines, *see* U.S.S.G. § 4B1.2(b), because the South Carolina statute of conviction, S.C. Code Ann. § 44-53-370(a), encompassed not only trafficking crimes but also conspiracy and the mere purchase of drugs—crimes not covered by the Guidelines' definition. Boyd also argued that the district court should not rely on

3

the state-court sentencing sheet for his 2013 conviction because it was inconclusive about the crime of conviction.

After hearing argument on Boyd's objections, the district court overruled them both and determined that Boyd qualified as a career offender.  As a result, Boyd's Guidelines sentencing range was 262 to 327 months.  The district court sentenced him to 262 months in prison.

B.

Boyd timely appealed.  In his opening brief to this Court, Boyd argued only that the district court procedurally erred by relying on inconclusive state-court documents to find that his 2013 drug offense qualified as a controlled substance offense for purposes of the Guidelines career-offender provision.  Boyd's opening brief specifically disclaimed any "objection regarding the AWIK conviction" on appeal.  Opening Br. at 6 n.6.  After briefing concluded, the Supreme Court decided in *Borden v. United States*, 141 S. Ct. 1817 (2021), that crimes that can be committed with a *mens rea* of recklessness are not violent felonies for purpose of the Armed Career Criminal Act (ACCA).  After *Borden*, Boyd submitted a letter of "supplemental authority" to this Court, arguing that his AWIK offense does not constitute a Guidelines crime of violence because South Carolina AWIK requires only recklessness.  A panel of this Court ordered additional briefing on *Borden* and on whether Boyd had abandoned his crime-of-violence argument.

The parties completed their supplemental briefing on October 15, 2021.  We have jurisdiction to consider Boyd's appeal of his sentence pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

4

II.

A defendant qualifies as a Guidelines career offender if, among other requirements, he has at least two prior felony convictions for "a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). The district court determined that Boyd has exactly two predicate convictions—the 2007 AWIK conviction and the 2013 drug conviction. In assessing Boyd's challenge to the district court's Guidelines application, "we review factual findings for clear error and legal conclusions *de novo*." *United States v. Adepoju*, 756 F.3d 250, 256 (4th Cir. 2014).

A.

Boyd first maintains that the district court erred by relying on inconclusive state-court documents to determine that his 2013 drug conviction was, in fact, a conviction for PWID, which counts as a Guidelines controlled substance offense. Addressing Boyd's contention requires some background about the judicial process used to make this determination.

1.

The Guidelines define a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance" or "the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). When evaluating whether a defendant's prior state conviction meets this definition, "we use the categorical approach," under which we "focus on the elements, rather than the facts, of the prior offense." *United States v.*

5

*Furlow*, 928 F.3d 311, 318 (4th Cir. 2019) (internal quotation marks omitted), *vacated and remanded on other grounds*, 140 S. Ct. 2824 (2020) (Mem.).  Accordingly, we ask only "whether the elements of the prior offense . . . correspond in substance to the elements of a controlled substance offense under the Guidelines." *United States v. Williams*, 997 F.3d 519, 523 (4th Cir. 2021) (internal quotation marks omitted).  Some state statutes list elements "in the alternative, thereby defining multiple offenses." *Furlow*, 928 F.3d at 318.  For these divisible statutes, we use a modified categorical approach by which we "examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Descamps v. United States*, 570 U.S. 254, 262 (2013).  This limited class of documents—often called *Shepard* documents—includes "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms," *Johnson v. United States*, 559 U.S. 133, 144 (2010), as well as "comparable judicial record[s] of this information," *Shepard v. United States*, 544 U.S. 13, 26 (2005).

Here, the parties agree that the South Carolina statute under which Boyd was convicted in 2013 is divisible.  That statute makes it "unlawful for any person . . . to manufacture, distribute, dispense, deliver, purchase, aid, abet, attempt, or conspire to manufacture, distribute, dispense, deliver, or purchase, or possess with the intent to manufacture, distribute, dispense, deliver, or purchase a controlled substance or a controlled substance analogue."  S.C. Code Ann. § 44-53-370(a)(1).  In a persuasive unpublished decision, we previously concluded that Section 44-53-370(a)(1) sets forth separate offenses with different elements, making it divisible.  *See United States v.*

6

*Marshall*, 747 Fed. App. 139, 150 (4th Cir. 2018); *United States v. Kershaw*, 779 Fed. App. 172, 173 (4th Cir. 2019) (per curiam) (adhering to *Marshall*). The Fifth Circuit has so held in a published opinion. *See United States v. Rodriguez-Negrete*, 772 F.3d 221, 226–227 (5th Cir. 2014). And our Court has also concluded, in a published decision, that a different South Carolina drug statute "almost identical" to Section 44-53-370(a)(1) is divisible for the same reason. *Furlow*, 928 F.3d at 320 (analyzing S.C. Code Ann. § 44-53-375(B)). We therefore are satisfied with the parties' shared position that Section 44-53-370(a)(1) is indeed divisible and that the modified categorical approach applies.

The parties also agree that the elements of a PWID conviction under Section 44-53-370(a)(1) correspond with the Guidelines' definition of a controlled substance offense. *See Marshall*, 747 Fed. App. at 151; *see also Williams*, 997 F.3d at 524–525 (PWID under Section 44-53-375(B)). Thus, the only dispute on appeal, to which we now turn our attention, is whether the *Shepard* documents show that Boyd was in fact convicted of PWID instead of mere purchase or conspiracy, which are alternative ways to violate Section 44-53-370(a)(1).

### 2.

At sentencing, the Government bore the burden of proving Boyd's prior crime of conviction by a preponderance of the evidence. *Williams*, 997 F.3d at 524; *see also United States v. Washington*, 629 F.3d 403, 409–410 (4th Cir. 2011) (rejecting the argument that *Shepard* "requires a departure from the preponderance standard" because *Shepard*'s references to "'certainty' and 'conclusive[ness]' . . . define the universe of records the government may use in proving the nature of a prior conviction, not the burden of proof it

7

faces in making its showing from those records"). To determine which of Section 44-53-370(a)(1)'s alternative crimes Boyd was convicted of in 2013, the district court relied primarily on Boyd's state-court sentencing sheet. Although the state-court indictment was also in the record, the court recognized that only the sentencing sheet specified the crime to which Boyd pleaded guilty. The sentencing sheet stated that, "[i]n disposition of the said indictment," Boyd "pleads to: Drugs / Manuf., poss. of other sub. in Sch. I, II, III or flunitrazepam or analogue, w.i.t.d. – 1st in violation of § 44-53-0370(b)(2)," the penalty provision for Section 44-53-370(a). J.A. 188. After discussing the sentencing sheet at some length, the district court concluded that Boyd "pled to an intent to distribute charge," not "purchasing." J.A. 117.

Boyd does not dispute that sentencing sheets used by South Carolina courts are valid *Shepard* documents, as we have repeatedly held. *See, e.g.*, *Williams*, 997 F.3d at 523–524; *United States v. Bethea*, 603 F.3d 254, 259 (4th Cir. 2010); *United States v. Young*, 846 Fed. App. 179, 183 (4th Cir. 2021); *Marshall*, 747 Fed. App. at 150. Rather, Boyd's sole objection is to the district court's finding that his sentencing sheet shows by a preponderance of the evidence that his 2013 conviction was indeed for PWID and not some other, nonqualifying offense prohibited by Section 44-53-370(a)(1). This is "straightforward trial court fact-finding within the framework of *Shepard*." *Washington*, 629 F.3d at 406; *see also United States v. Taylor*, 659 F.3d 339, 348 n.* (4th Cir. 2011). We typically review fact-finding only for clear error, even when the district court's determinations are based wholly on documentary evidence. *See Anderson v. Bessemer City*, 470 U.S. 564, 574–575 (1985); *Walsh v. Vinoskey*, 19 F.4th 672, 677 (4th Cir. 2021).

8

We see no reason to deviate from that standard here. *See United States v. Chisolm*, 579 Fed. App. 187, 189 n.1 (4th Cir. 2014) ("We review the factual question of whether Chisolm was actually convicted of CDVHAN for clear error."); *United States v. Houman*, 234 F.3d 825, 827 (2d Cir. 2000) (per curiam) ("We review the district court's factual finding as to the nature of the 1975 conviction under a clear error standard . . . .").

It is hard to conclude that the district court erred, much less clearly erred, in Boyd's case. His sentencing sheet explicitly reads that Boyd pleaded guilty to "Drugs / Manuf., poss. of other sub. in Sch. I, II, III or flunitrazepam or analogue, w.i.t.d. – 1st in violation of § 44-53-0370(b)(2)." J.A. 188. Immediately below that description are signatures from Boyd, Boyd's counsel at the time, and the state prosecutor, all "attest[ing]" to the conviction. J.A. 188. At the bottom of the sheet appear the signatures of the presiding judge, the clerk of court, and the court reporter.

Boyd nevertheless argues that the description of his offense on the sentencing sheet is unreliable because it matches the broad description generated by South Carolina's Criminal Data Report code system for all first offenses penalized under Section 44-53-370(b)(2). Boyd claims that this broad offense description encompasses the purchase of drugs and conspiracy, as well as PWID. Thus, according to Boyd, there is no way to tell from the description used in his sentencing sheet that the offense to which he pleaded in 2013 was an offense for PWID as opposed to some other crime.

Even accepting Boyd's representation about the South Carolina code system, we cannot conclude that the district court clearly erred. Boyd acknowledges that sentencing sheets for Section 44-53-370(b)(2) offenses are not restricted to using the code system

9

description; individualized descriptions may be handwritten or typed in to accurately reflect the crime of conviction. Yet, despite the various ways to violate Section 44-53-370(a) and (b)(2), Boyd's sentencing sheet refers only to manufacture and possession with intent to distribute. As the district court explained, we have no reason to believe that six individuals—including Boyd, his attorney, the prosecutor, and the judge—"would all sign off on a sheet that was inaccurate in terms of what the defendant pled guilty to." J.A. 111. Thus, even if the description of the offense in the sentencing sheet matched that used in South Carolina's code system, this fact by itself does not "undermine this strong, contemporaneous evidence of cross-party consensus on a defendant's offense of conviction." *Young*, 846 Fed. App. at 183 (reversing district court for refusing to rely on South Carolina sentencing sheets). Nor has Boyd identified any evidence that his sentencing sheet was inaccurate.

We are not alone in concluding that a South Carolina sentencing sheet with this description, or one similar to it, can prove a defendant's offense by a preponderance of the evidence for Guidelines purposes. In an unpublished decision, a prior panel of this Court held that a district court did not err in relying on a sentencing sheet that used the exact description at issue here: "Drugs / Manuf., poss. of other sub. in Sch. I, II, III or flunitrazepam or analogue, w.i.t.d. – 1st." *See Kershaw*, 779 Fed. App. at 173–174; Opening Br. at 4, *Kershaw*, 779 Fed. App. 172 (4th Cir. 2019) (No. 18-4929); *see also id.* at 7–11 (making arguments identical to Boyd's). Similarly, in *Rodriguez-Negrete*, the Fifth Circuit rejected a defendant's assertion that using the abbreviation "PWID/Dist." to describe a violation of Section 44-53-370(a) and (b)(1) "lacks the specificity necessary to

10

identify the offense of conviction." 772 F.3d at 228 (internal quotation marks omitted). As that court observed, because "South Carolina sentencing sheets . . . are signed by the defendant, defense counsel, and the judge," even a "shorthand" identifier like "PWID/Dist." is a "reliable" source from which to find that the defendant "was convicted of a drug trafficking offense" rather than one of the other "various ways in which [the statute] may be violated." *Id.* at 227–228.

While neither *Kershaw* nor *Rodriguez-Negrete* bind us, we are not persuaded to depart from their reasoning here. We therefore conclude that the district court did not clearly err in finding that Boyd pleaded guilty to PWID in violation of Section 44-53-370(b)(2) based on the South Carolina sentencing sheet he signed saying exactly that.

### B.

In supplemental briefing, Boyd additionally contends that he does not qualify as a career offender because his 2007 AWIK offense was not a crime of violence as defined by the Guidelines. *See* U.S.S.G. § 4B1.1(a). Boyd did not raise this argument in his opening brief to this Court. "It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned." *United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004). An exception exists, however, for claims based on "an intervening decision of this Court or the Supreme Court [that] affects precedent relevant to a case pending on direct appeal." *United States v. White*, 836 F.3d 437, 443–444 (4th Cir. 2016), *abrogated on other grounds by United States v. Stitt*, 139 S. Ct. 399 (2018); *see id.* at 444 (reasoning that, under our existing precedent, "it would have been futile" for the appellant to raise his argument in the opening brief). Boyd seeks to invoke this exception by relying

11

on the Supreme Court's decision in *Borden*, which issued after briefing in this appeal was complete.

We cannot conclude that Boyd's argument was unavailable when he filed his opening brief. Boyd contends that his AWIK offense is not a crime of violence under the Guidelines force clause because it can be committed recklessly. In *Borden*, the Supreme Court held that an offense is not a violent felony under the materially identical ACCA force clause if it can be committed with a *mens rea* of recklessness. *Borden*, 141 S. Ct. at 1821–1822. But far from "upend[ing]" our precedent, *Borden* confirmed it. *White*, 836 F.3d at 443. By the time Boyd filed his opening brief, this Court had already reached the conclusion that *Borden* would later adopt, reasoning that "the ACCA force clause requires a higher degree of *mens rea*" than recklessness. *United States v. Middleton*, 883 F.3d 485, 497 (4th Cir. 2018) (Floyd and Harris, JJ., concurring); *cf. United States v. Hodge*, 902 F.3d 420, 427 (4th Cir. 2018) (agreeing with the parties that reckless endangerment does not satisfy the ACCA force clause after *Middleton*); *United States v. Allred*, 942 F.3d 641, 653–654 (4th Cir. 2019) (discussing circuit precedent reasoning that recklessness is insufficient). We had also interpreted similar force clauses in other statutes to exclude offenses that could be committed recklessly. *See United States v. McNeal*, 818 F.3d 141, 154–156 (4th Cir. 2016) (18 U.S.C. § 924(c)(3)); *Garcia v. Gonzales*, 455 F.3d 465, 468–469 (4th Cir. 2006) (18 U.S.C. § 16).

Indeed, Boyd knew this argument was "available to him" when he filed his opening brief, *White*, 836 F.3d at 443, because he raised it in his objections to the presentence report. *See* J.A. 180 n.4 (arguing that "a recklessness *mens rea* is insufficient to establish that an

12

offense is a crime of violence," citing *Garcia*, 455 F.3d at 469, and *United States v. Vinson*, 805 F.3d 120, 125 (4th Cir. 2015)).  Yet he chose not to pursue that argument in his opening brief on appeal, thereby waiving it for appellate review.  *See* Opening Br. at 6 n.6 (stating that Boyd's "objection regarding the AWIK conviction is not at issue in this appeal").  While no litigant is expected to be clairvoyant, an argument may be "'actually available'" without having been dispositively settled by the Supreme Court.  *United States v. Cisson*, 33 F.4th 185, 191 (4th Cir. 2022) (quoting *White*, 836 F.3d at 443).  That was the case here, and we therefore conclude that Boyd abandoned his AWIK challenge by failing to raise it in his opening brief on appeal.

## III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

13

PAMELA HARRIS, Circuit Judge, dissenting:

I must part company with the majority in its treatment of Cory Boyd's 2013 conviction for violating South Carolina's controlled substances statute.  It is common ground that South Carolina's omnibus law, S.C. Code § 44-53-370(b)(2), sweeps more broadly than the Sentencing Guidelines definition of "controlled substance offense," covering drug offenses – like simple purchase and drug conspiracies – that fall outside the Guidelines provision, as well as offenses that fall within it.  *See United States v. Furlow*, 928 F.3d 311, 319 (4th Cir. 2019), *vacated on other grounds*, 140 S. Ct. 2824 (2020); *United States v. Norman*, 935 F.3d 232, 237–38 (4th Cir. 2019).  So Boyd's conviction can qualify as a career-offender predicate only if approved *Shepard* documents make clear that his particular offense is on the right side of this line – that its elements make it a categorical match with the Guidelines definition in § 4B1.2(b).  *See Furlow*, 319–22 (applying modified categorical approach).  The government argues, and the majority agrees, that *Shepard* documents in this case satisfy that standard, establishing that Boyd was convicted of possession with intent to distribute marijuana and not some other offense that would take him outside the scope of the Guidelines provision.  I disagree, and respectfully dissent.[1]

"The Supreme Court has repeatedly stressed that there is a 'demand for certainty' in determining whether a defendant was convicted of a qualifying offense."  *United States v.*

---

[1] Because a defendant must have two qualifying felony convictions to be designated a career offender under the Sentencing Guidelines, *see* U.S.S.G. § 4B1.1(a), I would vacate Boyd's sentence and remand for resentencing on this ground alone, without reaching the status of his 2007 South Carolina conviction for assault with intent to kill.

*Gandy*, 917 F.3d 1333, 1340 (11th Cir. 2019) (quoting *Mathis v. United States*, 579 U.S. 500, 519 (2016)).  That has been clear since *Shepard* itself, in which the Court recognized that the "modified" categorical approach can be squared with the underlying principles requiring a categorical analysis only if we "demand [] certainty" from the records before us.  *See Shepard v. United States*, 544 U.S. 13, 21–24 (2005).  That means we are limited to documents – like "the state court indictment, a transcript of the plea colloquy in state court, or a comparable state court record," *Furlow*, 928 F.3d at 318–19 – that have the "conclusive significance of a prior judicial record," *Shepard*, 544 U.S. at 25.  It also means that we may find that a defendant was convicted of a qualifying offense only if those documents "speak plainly" in establishing the elements of his offense.  *Mathis*, 579 U.S. at 519.[2]

That is a high standard, and the Supreme Court has warned us that there will be times when it cannot be met.  Local records may be incomplete or unedifying, and when they are, that will "frustrate application of the modified categorical approach," *Johnson v. United States*, 559 U.S. 133, 145 (2010), because we are not at liberty to substitute our best

---

[2] It is true that the government may meet its burden of proving that a prior conviction qualifies as a predicate offense under the "preponderance of the evidence" standard.  *See United States v. Andrews*, 808 F.3d 964, 968 (4th Cir. 2015).  That is because we held, in *United States v. Washington*, 629 F.3d 403, 409 (4th Cir. 2011), that there is no inconsistency between *Shepard*'s references to "certainty" and this burden of proof:  One goes to the kind of document that can be used to demonstrate, with the requisite certainty, the elements of the underlying conviction; the other, to the standard of proof by which the government must prove the necessary certainty.  If that were not so, of course, then it would be the standard of proof that would have to give way, in light of the Supreme Court's clear instructions, both before and after *Washington*, as to the "demand for certainty."  *Shepard*, 544 U.S. at 21; *Mathis*, 579 U.S. at 519.

15

hypothesis as to the offense of conviction. Instead, we must acknowledge that the "record materials will not in every case speak plainly, and if they do not, a sentencing judge will not be able to satisfy [the] demand for certainty when determining whether a defendant was convicted of a [qualifying] offense." *Mathis*, 579 U.S. at 519 (internal quotation marks omitted). In my view, this is just such a case.

The government relies on two record documents to establish that Boyd's 2013 conviction was for possession with intent to distribute marijuana: an indictment, on which, in fairness, it relies only inconsistently;[3] and a state court sentencing sheet, which accompanies a guilty plea in South Carolina. Although the majority does not rest on the indictment, I begin there, because I think it is important to explain why the government's arguments cannot be accepted. It is undisputed that an indictment generally is a proper *Shepard* document, and had Boyd pled guilty to the charge in the indictment – "Possession of Marijuana With Intent to Distribute – 2nd Offense," J.A. 190 – then this would be a much more straightforward case. The problem is that Boyd did not plead guilty to that offense, as all agree. And if a defendant does not plead guilty to the offense charged in the indictment, then obviously, "the indictment becomes irrelevant for determining the crime of conviction." *United States v. Williams*, 997 F.3d 519, 523 (4th Cir. 2021) (quoting *United States v. McLeod*, 808 F.3d 972, 976 (4th Cir. 2015)).

---

[3] In its brief, the government expressly declined to rely on the indictment, instead resting its case entirely on the sentencing sheet. But it changed its mind after briefing and submitted a Rule 28(j) letter arguing that the indictment, too, establishes that Boyd's prior conviction categorically qualifies as a "controlled substance offense" for Guidelines purposes.

Although the sentencing sheet has its deficiencies, as discussed below, it is clear on one thing: whatever the precise drug offense to which Boyd pled guilty, it was a *first* offense, not a second, as charged in the indictment. The sentencing sheet lists the indictment as charging a violation of S.C. Code § 44-53-370(b)(2) – the omnibus controlled substances statute – with the CDR Code 0187, which is the state code for second violations of the statute. But it lists Boyd's plea as one to § 44-53-370(b)(2) with CDR Code 0186, which applies to *first* violations, and includes the notation "1st" in its description of the offense. J.A. 188. Moreover, the sentencing sheet indicates that Boyd "Waive[d] Presentment to [the] Grand Jury" instead of pleading guilty "As Indicted" or to a "Lesser Included Offense," *id.*, confirming that he did not plead guilty to the second offense charged in the indictment.

None of this is disputed; the government's theory of the case is that after being charged with possessing marijuana with intent to distribute for a second time, Boyd agreed to plead guilty to a first offense, instead. And it follows that the original indictment, charging an offense to which Boyd did not plead guilty, is no more relevant than an indictment charging a different defendant. Neither tells us anything – much less with certainty – about the offense for which Boyd actually was convicted. *See McLeod*, 808 F.3d at 976.

Nevertheless, the government takes the position that we should rely on the indictment. The government's argument, as I understand it, is that Boyd's indictment remains probative here because the offense to which he pleaded guilty – a first violation of South Carolina's bar on possession of marijuana with intent to distribute – is a lesser-

17

included offense of the second violation charged in his indictment. *See* ECF No. 74 at 1 ("[Boyd's] sentencing sheet[] shows the offense to which [he] pled guilty has the exact same elements as the offense with which he was charged in the indictment.") There are at least two fundamental flaws in that argument. First, it is hopelessly circular, in that it starts from the premise that we know already, from the sentencing sheet, the "offense to which [Boyd] pled guilty." *Id.* If that is so, then the indictment adds nothing; if it is not (and it is not), then the government has no account for why we nevertheless should rely on the indictment. Second, if the government is correct that a first violation of any subpart of § 44-53-370(b)(2) is a lesser-included offense of a second, then it would seem to follow that Boyd, charged with a second instance of possession with intent to distribute, could *not* have pleaded guilty to a first: As noted above, his sentencing sheet does not mark the box for a plea to a "Lesser Included Offense" but instead notes that Boyd "Waive[d] Presentment to [the] Grand Jury" – both of which would be incorrect if Boyd in fact were pleading guilty to a lesser-included offense. The government recognizes this crucial inconsistency but tells us – and the irony appears to be unintentional – that we may write it off as an error in the sentencing sheet, because "sometimes these sheets are internally inconsistent or cannot be reconciled with South Carolina case law." ECF No. 74 at 2.

That brings us to the sentencing sheet itself, on which the majority does rely. As the majority explains, we have treated South Carolina sentencing sheets as falling within the class of approved *Shepard* documents, *see Williams*, 997 F.3d at 523, and Boyd does

18

not contest that point.[4]  He does argue, however, that this particular sentencing sheet does not provide the requisite clarity as to whether he pled guilty to a "controlled substance offense" under the Guidelines – that is, to possession of marijuana with intent to distribute, as the district court found, and not to simple purchase or a drug-related conspiracy, neither of which would be a categorical match for § 4B1.2(b) of the Guidelines.  I agree.

Here is the central problem.  As noted above, the sentencing sheet has Boyd pleading guilty to a violation of § 44-53-370(b)(2) – which itself does not distinguish among the relevant drug offenses – accompanied by "CDR Code # 0186," which applies to *all* first offenses of that statute.  J.A. 188; *see CDR Codes*, South Carolina Judicial Branch, https://www.sccourts.org/cdr (last visited November 10, 2022).  There are no separate codes for separate § 44-53-370(b)(2) offenses; any first offense would carry CDR Code 0186.  And this is how South Carolina's online CDR code database describes Code 1086:

---

[4] I note, however, that our encounters with South Carolina's sentencing sheets – up to and including this one – have not been encouraging.  *See*, *e.g.*, *Williams*, 997 F.3d at 524 (discussing clerical errors in sentencing sheet); *United States v. Bethea*, 603 F.3d 254, 259 (4th Cir. 2010) (finding sentencing sheet insufficient to establish predicate conviction where it "merely state[d] that [the defendant] pled guilty to 'escape'"); *United States v. Young*, 846 F. App'x 179, 182–83 (4th Cir. 2021) (clerical errors again).  Nor has this court had occasion to explain why sentencing sheets, "form document[s] used by South Carolina courts," *United States v. Montes-Flores*, 736 F.3d 357, 362 n.4 (4th Cir. 2013), constitute "conclusive records made or used in adjudicating guilt," as required by *Shepard*, *see* 544 U.S. at 21.  Other courts have disclaimed reliance on documents like South Carolina's sentencing sheets.  *See*, *e.g.*, *United States v. Enrique-Ascencio*, 857 F.3d 668, 677 (5th Cir. 2017) (docket sheets and case summaries "are not *Shepard*-approved documents because they were prepared by court [clerical staff] not judges") (alteration in original) (internal quotation marks omitted)); *United States v. Abeyta*, 877 F.3d 935, 942 (10th Cir. 2017) (same).  With even the government admitting that "sometimes these sheets are internally inconsistent or cannot be reconciled with South Carolina case law," ECF No. 74 at 2, there may come a time when we will want to address this question more directly.

19

**CDR Code:**
0186
**Offense Description:**
Drugs / Manuf., poss. of other sub. in Sch. I, II, III or flunitrazepam or analogue, w.i.t.d. - 1st offense
**Offense Statute(s):**
44-53-0370(b)(2)

J.A. 139.

Now compare the explanatory language on Boyd's sentencing sheet: "Drugs/ Manuf., poss. of other sub. in Sch. I, II, III or flunitrazepam or analogue, w.i.t.d. – 1st."

In disposition of the said indictment comes now the Defendant who was ☐ CONVICTED OF or ☒ PLEADS
TO: Drugs / Manuf., poss. of other sub. in Sch. I, II, III or flunitrazepam or analogue, w.i.t.d. - 1st

in violation of § 44-53-0370(b)(2) of the S.C. Code of Laws, bearing CDR Code # 0186
☒ NON-VIOLENT ☐ VIOLENT ☐ SERIOUS ☐ MOST SERIOUS ☐ Mandatory GPS(CSC ☐ §17-25-45
w/minor 1st or Lewd Act)

J.A. 188.  This is simply the same generic description of the statute used by the CDR Code system.  There is nothing to indicate that this language was somehow tailored to Boyd's putative conviction for possessing marijuana with intent to distribute.  There is, to be sure, "w.i.t.d.," which doubtless stands, as the district court found, for "with intent to distribute." But there also is "Manuf.," though nobody believes Boyd pleaded guilty to a manufacturing charge; and the only controlled substance specifically mentioned is not marijuana but "flunitrazepam or analogue."  The problem in this case, in other words, is not that the sentencing sheet does not describe Boyd's conviction with sufficient specificity; it is that it does not describe his conviction at *all*, and instead, by all appearances, provides only a boiler-plate recitation of South Carolina's omnibus drug *statute*, taken directly from the CDR Code System.

If there is additional information that would allow us to read something more into this language, the government has not provided it to us.  One could hypothesize, for

20

instance, that as a matter of practice, this generic description, which in the CDR Code System applies to *all* first violations of § 44-53-370(b)(2), is used on sentencing sheets only in a subset of those cases, and never when the underlying conviction is for simple purchase or conspiracy. But the government has not even hinted at such a practice, or anything else to call into question the most obvious reading of the relevant language: that it tells us nothing about the particular nature of Boyd's conviction except that it was for a first violation of some part of § 44-53-370(b)(2). And because some but not all parts of that statute qualify as "controlled substance offenses" under the Guidelines, that is not enough to establish – let alone "plainly," *see Mathis*, 579 U.S. at 519 – that Boyd's conviction is a valid Guidelines predicate.

To be sure, there is nothing implausible about the account advocated by the government and adopted by the district court: that after he was charged with violating South Carolina's bar on possessing marijuana with intent to distribute for a second time, Boyd pleaded down to a first offense. But "[s]peculation based on inferences is misplaced in light of the Supreme Court's concern about establishing with 'certainty' that a prior conviction is a predicate crime." *United States v. Rosa*, 507 F.3d 142, 153 (2d Cir. 2007); *see Mathis*, 579 U.S. at 510–12 (explaining that the modified categorical approach is an "elements-only inquiry" and "allowing a sentencing judge to go any further would raise serious Sixth Amendment concerns" and cause "unfairness to defendants"). Boyd was sentenced to 262 months' imprisonment because he was designated a career offender under the Guidelines; without that enhancement, his recommended sentencing range would have

21

been 90 to 97 months, not the 262 to 327 months considered by the district court. The stakes here are too high for guesswork.

Because no *Shepard* document in this case speaks plainly as to the elements of Boyd's 2013 conviction under South Carolina's controlled substances statute, I would vacate Boyd's sentence and remand for resentencing without the § 4B1.1 career offender enhancement. And because the majority takes a contrary view, I must respectfully dissent.